In the Matter of the Disputed Claim of Phœbe A. Grapel et al., as Administrators, etc., Respondents, *v.* N. D. Carlile Hodges, as Administrator, etc., Appellant.

The firm of N. D. C. & Son and K. executed an instrument which recited that the firm held "claims arising out of the depredations of the so-called Confederate privateers," and, by its terms, appointed K. their attorney to collect the same; and, in consideration of the "services rendered, and to be rendered" by K., it was agreed that he and his legal representatives or assigns might retain twenty five per cent of the amount collected, he to defray all expenses. K. thereafter caused the claims, which were known as "war premium claims," to be filed and scheduled with the department of state at Washington, to be by it presented for allowance before the Geneva Tribunal; they were included among the claims presented to that tribunal, and were by it rejected. After the passage of the act of congress, June, 1882, making provision for the allowance of such claims by the "Court of Commissioners of Alabama claims," K. tendered the services of his attorney to defendant, the administrator of the surviving partner of said firm, who refused to accept such services, or to allow K. to act in any manner in the prosecution of said claims, but employed other counsel, who collected the claims and defendant received the proceeds. Upon a claim presented against the estate, *held*, that the instrument was not simply a power of attorney uncoupled with an interest, and so revoked by the dissolution of the firm and death of the surviving partner, but was a contract for services which was not dissolved by those events; that K., by the services he rendered, acquired an interest and a

Statement of case.

right to continue the prosecution, which right did not end upon rejection of the claim by the Geneva Tribunal, and plaintiff was entitled to recover the stipulated reward, less the further expenses incurred; also, *held*, that the provision of the act of congress prohibiting any assignment or transfer of a claim to secure services rendered had no application.

K., who was not an attorney, had entered into contracts with M. & N., attorneys, by which he agreed to pay to them for their services a certain percentage of what he received for the collection of this and other claims. *Held*, that they did not thereby become partners with K. in the contract sued upon, and were not necessary parties to the action.

(Argued January 15, 1889; decided March 5, 1889.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 19, 1888, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee. (Reported below, 49 Hun, 107.)

The reference was of a claim presented by plaintiffs, as administrators of the estate of Gerhard Henry Koop, deceased, against the estate of Horace D. Carlile, who, at his death, was the surviving partner of the firm of N. D. Carlile & Son.

The claim was based upon an instrument in writing of which the following is a copy;

*Whereas,* Nathaniel D. Carlile & Son hold certain claims arising out of the depredations committed by the so-called Confederate privateers, amounting to $19,124.67, and interest and $17,942.69 ($17,942.69), have made, constituted and appointed G. Henry Koop, their true and lawful attorney for them and in their name, place and stead, or in the name of said Nathaniel D. Carlile & Son, to ask, demand and receive, and to take all lawful ways and means to collect said claims (with interest if possible), and on payment of the same, the said Nathaniel D. Carlile & Son will execute all necessary papers to secure the proper transfer of said claim to any party, department or government who may assume the payment thereof.

For value received, and in consideration of valuable services rendered and to be rendered, we hereby agree that the said G. Henry Koop and his legal representatives or

assigns, shall be entitled to and may retain twenty-five per cent of the amount collected, in money or government securities, or whatever shall be received therefor in payment.

And it is hereby understood and agreed that the said Nathaniel D. Carlile & Son shall in no event be held liable for any costs or charges except said twenty-five per cent above-mentioned, in the prosecution of said claims, but said Nathaniel D. Carlile & Son will furnish all necessary proofs required to sustain the claims.

And it is further understood and agreed that all moneys collected on said claims in pursuance of this agreement shall be collected in the name of Nathaniel D. Carlile & Son, and for their benefit.

And we do hereby give and grant unto the said G. Henry Koop and unto his legal representatives and assigns, full power and authority to do and perform all and every act whatsoever necessary and requisite to be done in and about the premises as fully, to all intents and purposes, as we might or could do.

In witness whereof, we have hereunto set our hands, this 15th day of February, 1872.

NATH'L D. CARLILE & SON.

It is agreed that if any portion thereof shall be paid on account of these claims, that of each payment seventy-five per cent shall accrue to Messrs. Carlile & Son, and twenty-five per cent to Henry Koop.

N. D. CARLILE & SON.<br>G. HENRY KOOP.

The claims referred to constituted what are commonly known as "war premium claims." The referee found, in sub-stance, the following facts: Koop used all proper means to present the claims to the government of the United States, for such action as the government should deem proper, and by reason thereof the claims were among the claims presented by the United States to the Tribunal of Arbitration at Geneva. These claims were, however, rejected by that tribunal. N. D.

Carlile, one of the firm of N. D. Carlile & Son, died in the autumn of 1875, leaving the defendant's intestate the sole surviving partner of the firm. He died in September, 1880. By act of congress approved June 5, 1882, the Court of Commissioners of Alabama Claims was re-established and provision was made for the filing of so-called war premium claims in said court within six months from its organization, and for the hearing and decision of said claims, and for the payment of the judgments rendered thereon. On the 12th of July, 1882, Koop, who was not an attorney at law, made a contract with one Manning, a duly admitted practitioner before the said Court of Commissioners of Alabama Claims, for the presenta- . tion of certain claims, including the claim of said firm, before said court, agreeing thereby to pay to Manning for his services a sum equal to five per cent of whatever was due upon said claims. A similar contract had been previously made with one Nickerson. Koop duly tendered to the administratrix of the estate of the surviving partner the services of Manning to prepare, file and prove the claim before the court, but the administratrix refused to accept such services or to allow Koop to act in any way in the prosecution of the claim and employed other counsel, who prepared the said claim for the administratrix, and thereafter presented the same, and thereupon recovered judgment against the United States, which was paid, and defendant received thereon $9,248.97.

The referee further found, that Koop performed each and all his agreements, so far as he was able to perform the same, without the concurrence of the administratrix, which was refused to said Koop. The referee found that the plaintiffs were entitled to recover the difference between what Koop would have been entitled to receive had he performed the contract and the cost to him of such performance.

Further facts are stated in the opinion.

*Thorndike D. Hodges* for appellant. A joint undertaking, with participation in the resulting profit and loss, whether the business be of a general nature or confined to particular trans-

actions, constitutes a general partnership. (*Sage* v. *Sherman*, 2 N. Y. 418; *Hubbell* v. *Buhler*, 43 Hun, 82; *Leggett* v. *Hyde*, 58 N. Y. 272; *Clafflin* v. *Hirsh*, 19 Week. Dig. 248; *Murray* v. *Fox*, 39 Hun, 108–110; *Evans* v. *Evans*, 9 Paige, 178; *Sweet* v. *Taylor*, 36 Hun, 256; *Nehrboss* v. *Bliss*, 88 N. Y. 600–604,; *Wall* v. *Bissell*, Daily Reg. May 3, 1888 [U. S. Sup. Ct. April, 1888]; *Berolgeimer* v. *Strauss*, 7 Civ. Pro. 226; *Gray* v. *Ryle*, 5 id. 387; *Bassett* v. *Fish*, 76 N. Y. 303–315.) The death of N. D. Carlile, in 1875, revoked the power of attorney, and the right to control and prosecute the claim in question passed at once from plaintiff's testator to the surviving partner, and at his death to defendant, his administrator. (*Hunt* v. *Rousmainer*, 8 Wheat. 174; *Hess* v. *Rau*, 95 N. Y. 363.) The power of attorney, like Exhibit A, contained no assignment of any specific interest in the claim. ( *Wright* v. *Ellison*, 1 Wall. 16; *Trist* v. *Child*, 21 id. 441–447; *Peugh* v. *Porter*, 112 U. S. 737–742; *Porter* v. *White*, 127 id. 235–244.)

*Henry G. Atwater* for respondents. In equity, an agreement for an interest in property to be acquired in the future, is valid and transfers the beneficial interest in the property as soon as acquired. (Benjamin on Sales, § 81; *Holroyd* v. *Marshall*, 10 H. L. Cas. 191; *P. & N. R. Co.* v. *Sampson*, L. R., 19 Eq. 462; *Ryall* v. *Rowles*, 2 W. & T., L. C. in Eq. 1560, 1606, note; *Taft* v. *Marsily* 47 Hun, 175; *Lawson* v. *Bachman*, 81 N. Y. 616; *Bachman* v. *Lawson*, 19 U. S. 659; *Trist* v. *Child*, 21 Wall. 441.) The contract of February 15, 1872, was not annulled by the death of the parties to it. ( *Wylie* v. *Coxe*, 15 How. [U. S.] 415; Story on Agency, § 488, note.) An agent who is employed to render services for his principal can recover for such services not only up to the time of the actual death of the principal, but up to the time he had knowledge of it. (Story on Agency, § 488; *Bk. of N. Y.* v. *Vanderhoest*, 32 N. Y. 553; *Cassidy* v. *McKenzie*, 4 W. & S. 282; *Dick* v. *Page*, 17 Mo. 234; *Caniger* v. *Whittington*, 26 id. 311; *Ish* v. *Crone*, 8 Ohio, 520.) In computing the value of Koop's services up to that time, the basis

is the contract-price less the cost of finishing the contract. (Wood's M. and S. [2d ed.] §§ 95, 189; *Wolfe* v. *Howes*, 20 N. Y. 197; *Clark* v. *Gilbert*, 26 id. 279.)

Finch, J. Neither Manning nor Nickerson were partners of Koop in the contract sued upon, and the objection founded on that allegation of a defect of parties plaintiff is not well taken. They were merely agents or employes of Koop, whose services were to be rendered in his behalf and whose compensation was to be measured by an agreed proportion of the ultimate profits realized by the employer. The referee does not find, and was not requested to find, the fact of any such partnership, and there is no trace in the history of the reference of any such question raised for decision. There can be no doubt, even if we recur to the proofs, that Manning was but an agent and attorney of Koop, and I think the same thing is true of Nickerson. He was examined as a witness, and while he speaks of a joint interest with Koop it seems merely to refer to the measure of compensation; for he says explicitly, in stating his relation with Koop. " I had an agreement with him, and under that agreement I was employed to assist in the prosecution of the so-called Alabama claims. " For the assistance rendered under that employment he was to have one-half of the profits realized by Koop, but no actual partnership, or intent to constitute that relation, is to be inferred from his evidence.

The further argument rests largely upon an idea that the writing signed by Koop and the firm of Carlile & Co. was merely a power of attorney not coupled with an interest which ended and was revoked by the dissolution of that firm and the death of the surviving partner; and since nothing up to that time had been recovered upon the claim for war premiums paid, no right to compensation accrued to Koop, and he merely lost his services through a risk which he had taken upon himself. But the paper signed by the parties was something more than a power of attorney. That was granted as incidental to a complete contract for services to be rendered on one side and compensation to be paid on the

other.   Carlile & Co. had suffered through the depredations of rebel cruisers, launched or armed under the eye of a treacherous neutrality.   Beyond the absolute destruction which followed, there accrued a ruinous increase in the rates of marine insurance.   Restoration of their losses the firm were desirous to obtain from or through the Federal authority. They employed Koop to effect that object.   Their contract was with him, his assigns and representatives, and it provided that for service in that direction, rendered and to be rendered, Koop should receive twenty-five per cent of the sum ultimately recovered.   He entered upon the service.   The claim was scheduled among those presented to the Geneva Tribunal, but was of a class rejected by its decision.   But Koop, and those interested with him, pressed the equity of these claims upon the government until the act was passed, in 1882, which authorized their allowance.   The surviving partner of Carlile & Co. had died in 1880, but his death did not dissolve the contract. On one side, by its terms, it ran to those who might in the end represent Koop, and on the other beyond the death of the Carliles, if that occurred before the recovery was reached, for its terminus was a recovery or a final abandonment of the claim.   By his services Koop had acquired an interest in the enterprise contemplated by the contract, and a right to continue its prosecution to reach and procure the compensation agreed.   Nor did it end with the rejection of the claim by the Geneva Tribunal.   A similar contention was held unfounded in *Lawson* v. *Bachman* (81 N. Y. 616; 109 U. S. 659).   Primarily, the loss was expected to be recovered through the intervention of the government whose rights had been violated, from the nation guilty of the violation, but the rejection of the claim by the Geneva Tribunal did not extinguish·it or make its further prosecution against our own government the presentation of a new claim, other and different from the one covered by Koop's contract. It remained the same loss, and the same equitable right to the damages sustained.

The reference to the provision of the act of congress, which prohibited any assignment or transfer of the claims presented to secure services rendered, has no application to the present case, for no such assignment was made or sought to be made. The ownership of the claim remained to the end in Carlile & Co. and their representatives. The latter could, as they did, refuse to make Koop their attorney, and so prevent him from fully performing his contract. But he tendered that full performance, and a recovery having been had, he is entitled to the stipulated reward less the further expense incurred in making the final collection. That amount the judgment gives him, and we think there was no error in it.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.