(140 App. Div. 277.)

## In re ALBERS REALTY CO.

(Supreme Court, Appellate Division, First Department. October 21, 1910.)

ATTORNEY AND CLIENT (§ 183*)—ATTORNEY'S LIEN—WHEN ATTACHING—ACTION —"COMMENCEMENT."

> Under Code Civ. Proc. § 66 (Judiciary Law [Laws 1909, c. 29; Consol. Laws, c. 30] § 475), giving an attorney a lien from the "commencement" of a proceeding, no right of lien attached under a retainer to obtain for an owner of land a proper award in condemnation proceedings by New York City, where the land was conveyed to a corporation before application was made for the appointment of the commissioners of estimate and assessment in the condemnation proceeding, which was the "commencement" of such proceeding; any remedy of the attorneys being action against their client for breach of contract.

> [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 385; Dec. Dig. § 183.*

> For other definitions, see Words and Phrases, vol. 2, pp. 1281–1286.]

Appeal from Special Term, New York County.

Application by the Albers Realty Company to cancel an attorney's lien. From an order confirming the report of a referee, canceling the notice of lien, the attorneys, Michael J. Mulqueen and another, appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Michael J. Mulqueen, for appellants.
Benjamin L. Blauvelt, for respondent.
Benjamin Trapnell, for Local Realty Company.

CLARKE, J. Henry F. Albers was the owner of certain property on Riverside Drive. On June 5, 1903, he retained Mulqueen & Mulqueen as his attorneys to appear for and represent the said property in proceedings instituted or to be instituted by the city of New York to acquire title thereto, to take such steps as they might deem necessary to obtain a proper award, and agreed to pay them 10 per cent. of the total sum awarded; the said attorneys out of the said percentage to pay for expert fees, survey, proof of title, and all other expenses necessary to establish the proper value of said property.

On February 10, 1905, by deed recorded February 18, 1905, Albers and his wife conveyed all the premises above mentioned to Albers Realty Company, a corporation then recently organized, of which Albers was the president; he and his wife and the bookkeeper in his employ being directors, and the bookkeeper being the secretary and treasurer. For this conveyance the corporation paid no cash, but issued all of its shares, and of those shares Mrs. Albers received and held nearly all. On February 13, 1906, the corporation counsel caused to be published in the City Record a notice of application to the Supreme Court on February 26, 1906, for the appointment of commissioners of estimate and assessment in the matter of the city's application to acquire title to lands and premises required for the purpose of widening Riverside Drive from West 158th street to West 165th street. On

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

February 15, 1906, Mulqueen & Mulqueen filed their written notice of appearance as attorneys for Henry F. Albers, owner of lot 10, block 2136, that lot being the premises above referred to. On March 26, 1906, Albers wrote to Mulqueen & Mulqueen as follows:

"In the Matter of the Claim of Henry F. Albers against the City of New York. I hereby revoke the authority given you for and by a certain paper dated June 5, 1903, a copy of which is hereto annexed, and you will take no further steps or do any further acts thereunder."

The order appointing commissioners of estimate and assessment was made on April 18, 1906. On the same day the Albers Realty Company, by H. F. Albers, its president, retained Benjamin L. Blauvelt to obtain as large an award as possible for its property, and authorized him to represent its interest before all proper authorities, and agreed to pay him for his services 10 per cent. of whatever award might be obtained. Thereafter Mr. Blauvelt put in the proofs and represented this property before the commissioners.

On July 16, 1906, the Albers Realty Company assigned to the Local Realty Company all of its right, title, and interest to any award made in the proceeding for any of its land taken in the improvement. The proceedings before the commissioners took their due course, and the final report was filed and confirmed December 31, 1907. An award was made to the Albers Realty Company for land and improvements, $67,394, subject to an assignment dated July 16, 1906, made by the Albers Realty Company to the Local Realty Company of all right, title, and interest of the Albers Realty Company in and to said award, subject to a mortgage for the sum of $45,000 made by Henry F. Albers to Thomas J. Simonson, dated July 22, 1902, and recorded the same day. On February 5, 1908, Mulqueen & Mulqueen filed a notice of lien against said award for 10 per cent. thereof, based upon the written retainer, whereupon this proceeding was brought to cancel said notice of lien. The Special Term has granted that application, and from the order entered thereon this appeal is taken.

The appellants base their claim upon the proposition which is stated in Sutherland on Damages (2d Ed.) vol. 3, p. 2040:

"On the client's breach of the special contract for legal services, he is liable for the amount he agreed to pay, subject to such abatement as would in the natural course of things have been disbursed in the way of expenses by the attorney, if he had been permitted to perform his agreement."

And they rely upon the following cases in this state: Marsh v. Holbrook, 3 Abb. Dec. 176; Lawson v. Bachman, 81 N. Y. 616; Grapel v. Hodges, 112 N. Y. 418, 20 N. E. 542; Matter of Robbins, 189 N. Y. 422, 82 N. E. 501; Carlisle v. Barnes, 102 App. Div. 573, 92 N. Y. Supp. 917.

In the Carlisle Case, plaintiff sued for damages for breach of contract. Mr. Justice Patterson said:

"It is further alleged * * * that the defendant employed the plaintiff as his attorney and counsel to institute and prosecute in the United States and state courts, or before the executive departments of the United States government, such proceedings as might in the plaintiff's judgment be necessary to collect the claims of the defendant's constituents for and on account of the exaction of the customs duties referred to; * * * that defendant

would pay to the plaintiff, for services rendered and to be rendered in connection with the said claims, as soon as he, the defendant, should be paid the amount to which he was entitled under the terms of his agreement with his constituents, a fee equal to 5 per cent. of the amount which might * * * be allowed to such constituents. An allegation is then made of the breach of the contract by the defendant, in that he failed and neglected to put the plaintiff in possession of any accounts or other evidence of said claims, or to furnish the individual names of the members of said firms to enable the plaintiff to institute any suit or suits, or proceedings at law or otherwise in the courts or before the departments, and the defendant thereby wholly prevented the further performance of the aforesaid agreement by the plaintiff. * * * The breach of the contract is clear. The refusal to give the plaintiff the data required so that he might perform his service is admitted. He could not proceed without them. There is some suggestion of inequity in the plaintiff's claim, because it is said he did nothing. This action is not on a quantum meruit. The plaintiff was not required to prove what work he actually performed. There was a special contract, and a breach, and the action is for a specific amount of damage, for an agreed sum, resulting from that breach. As this action is constituted, proof was not required, such as would be necessary in an action on a quantum meruit. * * * Here there was an executory contract, and a palpable breach, and the plaintiff is entitled to recover the fixed value of his contract, which was the 5 per cent. agreed upon. * * * If the defendant chose to displace the plaintiff and employ some one else, thereby committing a breach of the contract, he was bound to pay the latter the sum he had agreed to pay, because that was the value of the contract to the plaintiff. Bartlett v. O. F. Savings Bank, 79 Cal. 221 [21 Pac. 743, 12 Am. St. Rep. 139]. * * * The plaintiff is entitled to recover his 5 per cent., whether that amount is to be called strictly 'compensation,' or the 'value of the contract,' or 'profits.' Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205 [4 N. E. 264, 54 Am. Rep. 676]."

Of course there is a line of cases, of which Tenney v. Berger, 93 N. Y. 524, 45 Am. Rep. 263, is an instance, where the court said:

"While the attorney is thus bound to entire performance, and the contract as to him is treated as an entire contract, it is a singular feature of the law that it should not be treated as an entire contract upon the other side; for it is held that a client may discharge his attorney arbitrarily without any cause at any time, and be liable to pay him for the services which he has rendered up to the time of his discharge."

The cases cited to support that doctrine come, I think, under two classes: First, where there has been a general retainer; or, second, where the attorney has discharged himself or been discharged for cause. However that may be, the cases first above cited treat a specific contract between attorney and client upon the principle applied to other contracts for services, and hold that upon a breach by the employer the measure of the damages is the value of the contract. But the cases cited were cases where the attorney had brought an action for damages for the breach of his contract. The present proceeding has to do with the enforcement of an attorney's lien.

Section 66 of the Code of Civil Procedure, now section 475 of the judiciary law (Consol. Laws, c. 30, being chapter 29, Laws 1909), provides that:

"From the commencement of an action or special proceeding, * * * the attorney who appears for a party has a lien upon his client's cause of action, claim * * * which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof, in whosoever's hands they may come."

In the Matter of the City of New York (East 178th Street) 107 App. Div. 22, 94 N. Y. Supp. 838, this court said:

"It is the service of the application for the appointment of the commissioners of estimate and assessment that is the commencement of the proceeding. Prior to that time the property was not in any wise affected."

That date in the case at bar was February 13, 1906, and upon that date the title to the land involved and for which an award has been made had passed out of Henry F. Albers into the Albers Realty Company by a deed dated February 10, 1905, and recorded February 18, 1905.

As the appellants had no retainer or contract with the Albers Realty Company, the owner of the property at the time of the commencement of the proceedings, and the party entitled to the award upon which the lien is sought to be impressed, they had no lien which ever attached. Their remedy, if any, is by action against their client for breach of contract. It cannot be established in this proceeding.

The order appealed from should therefore be affirmed, with $10 costs and disbursements to the respondent. All concur.