## BRYAN v. ROSS et al. (No. 1496.)

(Court of Civil Appeals of Texas. Amarillo. June 4, 1919. Rehearing Denied July 2, 1919.)

1. PRINCIPAL AND AGENT ☞37 — POWER OF ATTORNEY — REVOCATION—AGENT'S INTEREST.

A bare power of attorney, in which the agent's only interest is in the performance of his services therein contracted to be rendered in order that he may earn the stipulated compensation, is revocable at the will of the grantor unless the power is given as security or is coupled with an interest.

2. PRINCIPAL AND AGENT ☞37—POWER OF, ATTORNEY—REVOCATION.

Where a client by contract employs an attorney to recover lands and remove clouds therefrom, and executes a power of attorney to the attorney to sue for and recover such lands, and assigns a two-thirds undivided interest in the recovery as compensation, the contract was intended as security, and the power is not revocable after a partial performance by the attorney.

3. PRINCIPAL AND AGENT ☞37 — POWER COUPLED WITH INTEREST—REVOCATION.

Where a client gave his attorney a written power to sue for and recover lands, and assigned a two-thirds undivided interest in lands or proceeds thereof recovered as compensation to the attorney, the attorney after part performance of his contract had acquired such an interest in the land sued for as to constitute an interest in the subject-matter of the power and to prevent revocation by the grantor.

4. ADVERSE POSSESSION ☞67 — LIMITATIONS —COMMENCEMENT OF PERIOD.

Entry into possession of land under a contract of exchange not accompanied by a deed starts the statute of limitation in favor of the person so entering.

5. VENDOR AND PURCHASER ☞239(6) — DEFENSES—RIGHTS OF INNOCENT PURCHASERS OF LEGAL TITLE.

The defense of innocent purchaser of the legal paper title is not available against the owner of a title by limitation, in view of Rev. St. 1911, art. 5679.

6. LIMITATION OF ACTIONS ☞124 — COMMENCEMENT OF SUIT—INTERVENTION.

Commencement of suit to recover land stops the running of limitations in favor of defendant as against the interest of one who intervenes therein under a power of attorney given by plaintiff to prosecute such suit, coupled with an interest in the land, since a judgment would be binding upon the intervener as well as the plaintiff.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Deck Martin against J. L. Ross and others, wherein E. P. Bryan intervenes. Judgment for defendants upon setting aside a verdict for plaintiff and intervener appeals. Reversed and remanded.

E. P. Bryan, of Dallas, for appellant.
Harry P. Lawther, T. F. Lewis, and J. R. Haynes, all of Dallas, for appellees.

BOYCE, J. This suit was originally brought by Deck Martin in 1905 to recover certain property in the city of Dallas. The plaintiff secured a judgment which was reversed on former appeal of the case. Ross v. Martin, 128 S. W. 718, 104 Tex. 558, 140 S. W. 432, 141 S. W. 518. While the appeal was pending the defendants in the suit paid the said Deck Martin $50 for a conveyance of the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

property to them. After the reversal of the case E. P. Bryan intervened therein, alleging that he had been employed as attorney by the said Deck Martin to prosecute said suit under power of attorney, which authorized him to demand, sue for, and recover such lands, and which granted and conveyed to him a two-thirds undivided interest in such lands as might be recovered in said suit; that defendants knew such fact and secured the conveyance from the said Deck Martin with intent to defraud said intervener of his interest in said lands. Wherefore intervener prayed that he be allowed to intervene, and that he recover a two-thirds interest in the land involved in the suit. The jury, in response to special issues submitted, found such facts as would have authorized a judgment thereon for Deck Martin for the recovery of an undivided one-half interest in the land but for his settlement with the defendants. No issue as to the right of the attorney to maintain the suit and recover for his own benefit was submitted. The trial court set aside the verdict of the jury, and entered judgment for the defendants, evidently on the ground that the intervener had no such interest in the land as would authorize him to proceed with the suit after the settlement with Deck Martin. Appellant's complaint is to this action of the court.

Deck Martin, by a written power of attorney, employed the intervener and another, whose interest the intervener acquired prior to the intervention herein, to sue for and recover any lands to which he might be entitled in the state of Texas, and empowered the said attorney to sell such property for such price and on such terms as should seem proper to him, and to appear for the grantor in any and all courts of the state of Texas, and to sue for said lands and to compromise or otherwise adjust any adverse claim or claims thereto. Said power of attorney, after reciting that the said attorneys "will be at considerable trouble and expense in finding out and removing the cloud or clouds from said land," continued as follows:

"Therefore, as remuneration to them, we hereby give, grant, sell, and convey unto them, the said J. J. Hart and E. P. Bryan, a two-thirds undivided interest of, in, and to any and all lands, money, or other valuables so recovered for us. Said lands shall be sold and the money divided, or they may be partitioned after being cleared up of all adverse claims whatsoever as to our said attorneys shall seem best."

The power of attorney was duly recorded, and the defendants, at the time of their settlement with Deck Martin, had knowledge thereof, and that the intervener was acting thereunder in the prosecution of the suit. The settlement was made with Deck Martin without the knowledge and consent of the intervener.

[1] In support of the disposition of the case as made by the trial court, appellee asserts that the intervener had no such interest in the land as would prevent the power of attorney from being revoked by Deck Martin; and that upon its revocation the attorney could not thereafter proceed with the suit. A great many authorities, dealing with the question as to when a power of attorney is revocable, may be found. Certain general principles are recognized by them all, but there is considerable divergence in the application of these principles. Mechem on Agency (2d Ed.) §§ 561–581. It is universally held that a bare power of attorney, in which the agent's only interest is in the performance of the services therein contracted to be rendered in order that he may earn the stipulated compensation, is revocable at the will of the grantor. But where the power is given as security, or is coupled with an interest, then it is irrevocable—in the latter instance, even by the death of the grantor. Hunt v. Rousmanier, 8 Wheat. 203, 5 L. Ed. 589; Mechem on Agency, supra. So that we have to consider first, whether the power of attorney in this case was given as security, and, second, whether it is coupled with an interest.

[2] In most of the cases where the powers were protected from revocation on account of being given as security the debt or obligation secured was independent of the debt incurred for expenses and compensation for services under the contract of employment itself; but we see no reason to doubt that where the contract of employment contemplates the incurring of expenses and rendition of services over a period of time prior to the realization of the proceeds of the exercise of the power, out of which the agent is to receive his compensation, and it appears that one of the purposes of the granting of the power is to secure the agent in the payment of compensation for such services and expenses incurred, then the power would not be revocable at the will of the grantor. Mechem on Agency, § 567. The employment of attorneys in cases of this kind is usually in contemplation of protracted litigation, and the client is either unable or unwilling to pay a cash certain fee, and where the contract of employment in such cases grants the attorney such large powers as in this instance, and assigns an interest in the result of the services contracted to be performed, it would, we think, be a reasonable construction of the contract to conclude that it was intended as a security to induce the attorney to render such services. If this were true, such contract would prevent the revocation of the power after a partial performance thereof. We have found no authorities that place a holding of irrevocability of such contract on this express ground, and, since the conclusion we reach on our consideration of the second phase of the question is sufficient to dispose

of the question generally, we need not make a more definite statement of our conclusion as to this particular branch of the question.

A statement made by the Supreme Court of the United States in the case of Hunt v. Rousmanier's Adm'rs, 8 Wheat. 203, 5 L. Ed. 589, as to what is meant by "interest," as that word is used in the expression "power coupled with an interest," is quite generally accepted by later authorities as furnishing the test for determining the character of a particular power under investigation and has been approved by the courts of this state. Daugherty v. Moon, 59 Tex. 397. The statement referred to is to the effect that the interest thereby meant is "an interest in the subject on which the power is to be exercised," and not "an interest in that which is produced by the exercise of the power." The difference in the authorities is not in the statement of the rule, but in the construction of the effect of various powers of attorney in connection therewith. An exhaustive treatment of the subject will be found in the reference we have made to Mechem, and we will refer only to some of the cases that have construed instruments most nearly alike to the one we are considering. In the case of T. & P. Ry. Co. v. Vaughan, 16 Tex. Civ. App. 403, 40 S. W. 1065, in which writ of error was denied, Peter Waters employed H. W. Vaughan as attorney to prosecute a suit for damages against the T. & P. Railway Company for personal injuries sustained by the said Waters. The contract, which was very similar to the one in this case, authorized the attorney to prosecute the suit in the name of Waters, and to compromise and settle it, and contained this provision:

"In consideration of the faithful performance of the duties imposed upon him as my attorney in the prosecution and collection of my claim and suit aforesaid, I hereby sell and convey and agree to pay and deliver to said Vaughan one-half of whatever sum may be realized out of and collected from said railway company, whether through compromise or by judgment of the courts, by reason of the injuries done me by said company as aforesaid."

After the institution of the suit in his name, Waters settled with the railway company and the attorney intervened and sought to further prosecute the suit, and it was held that the words we have just quoted were "a sufficient transfer to Vaughan of one-half of the cause of action," and that "he was not bound by any settlement made by Waters with the company, and had the right to prosecute the suit for his own benefit and to the extent of his interest." In the case of G. H. & S. A. Ry. Co. v. Ginther, 96 Tex. 295, 72 S. W. 166, it was decided by the Supreme Court that an assignment by the client to the attorney of—

"one-third of 'whatever sum may be recovered' in said suit or by way of compromise, * * * plainly expressed the intention to assign an interest in a cause of action of which a judgment or compromise was to be the measure, and the expression of this intention in any language was all that was required to make an assignment as contradistinguished from a mere agreement to pay so much as a contingent fee."

The opinion in this case expressly approved the decision in the case of T. & P. Ry. Co. v. Vaughan, supra. The holding in the case of T. & P. Ry. Co. v. Vaughan was again approved by the Supreme Court in the case of Seiter v. Smith, 105 Tex. 205, 147 S. W. 228; and in said case the attorney's right to proceed with the suit to protect his own interest in the recovery, notwithstanding a settlement by his client, was upheld. To the same effect are the decisions in the cases of G., C. & S. F. Ry. Co. v. Stubbs, 166 S. W. 700; Hahl v. Hutcheson, 196 S. W. 262; Grapel v. Hodges, 112 N. Y. 419, 20 N. E. 542. The Supreme Court of the United States held in the case of Jeffries v. Mutual Life Insurance Co., 110 U. S. 305, 4 Sup. Ct. 8, 28 L. Ed. 156, that where an attorney was employed to prosecute a claim for a share of the collection, and was given power to compromise, the power was coupled with an interest and was irrevocable. Mr. Mechem says of the decision in this case that "it is difficult to sustain this conclusion unless it be thought that the contract gave the attorney an interest in the claim as well as a power over it." Mechem on Agency, 660. As we have seen such is the ground on which the Texas courts have sustained a similar conclusion. So if the contract were in reference to the prosecution of a claim for a debt or damages there would seem to be no doubt as to what our decision of the question should be. But the Court of Civil Appeals for the Fourth District, in the case of Brown v. King, 196 S. W. 884, held that a power of attorney like the one before us did not convey any interest in the land and might be revoked, and a distinction was suggested between such contracts in reference to land and those in reference to choses in action. A writ of error was denied in this case by the committee of judges from the Courts of Civil Appeals. However, the disposition of the case was sustainable on other grounds, announced by the court in its opinion, so that the denial of the writ of error under the circumstances was not necessarily an approval of this particular holding, and we have been unable to agree that this holding is correct. The courts, in construing these contracts, in the cases we have referred to, evidently looked for the intention of the parties as that was to be ascertained from all the terms of the contract, and the substantial effect thereof, and, as it appeared therefore that it was the intention of such contract to

create a community of interest in the attorney and client in the claim and collection, held the contracts to have such effect, although the words of assignment literally applied only to the recovery. We are unable to understand why there should be any difference in the construction of the effect of such a contract whether the subject thereof be a chose in action or land; they are both the subject of ownership and transfer, and the same language of transfer of an interest therein is appropriate to each character of property.

Our view of this matter is, we think, strengthened by the decisions in the cases of Hazlett v. Harwood, 80 Tex. 508, 16 S. W. 310, and Tayler v. Taul, 88 Tex. 665, 32 S. W. 866. In the first case cited the Supreme Court said of a similar power of attorney, in reference to land:

"The instrument styled a 'power of attorney,' while it cannot be treated as a deed for any particular land, because it describes none, is yet something more than a mere power of attorney, and may be treated as a contract to convey the legal title to any land to which it can be held to apply, and, upon proof of compliance by the grantees with their part of the agreement, it, in connection with such proof of compliance, would be evidence of an equitable title in them or their vendees to an undivided interest in any land to which such proof applies."

In the second case cited, the agent, under such a power of attorney, had done nothing thereunder in reference to the particular land the title to which was in controversy, and it was held that such contract was—

"an executory contract, * * * being an executory contract, requiring the rendition of some service contemplated by the agency in order to confer upon the agent any interest in the particular lands, and there being no evidence in this record that the agent, Tayler, * * * ever attempted to exercise the agency conferred by said instrument upon this particular land, we are of opinion that plaintiff in error has not shown that she was entitled to any interest therein."

[3] In the present case the attorney had, by the institution of the suit, identified particular lands as subject to the operation of the "executory contract," and had rendered services extending over a period of several years in the prosecution of such suit. He had thus paid a part of the consideration on his executory contract for the acquisition of an interest in this particular land. His interest at the time of the settlement, it is true, was not a vested title to the land, yet a part of the consideration for such interest had been paid, and upon the performance of the remaining services he would acquire the equitable title to such interest, by virtue of the terms of the power itself and without further act on the part of the grantor. This it seems to us, is sufficient to constitute an interest in the subject-matter of the power, and prevent the revocation of the power by the grantor so as to defeat such interest.

We are of the opinion, therefore, that the attorney had the right to prosecute the suit to recover his interest in the land, notwithstanding the settlement made by his client Deck Martin, without his consent, and for this reason the judgment of the trial court must be reversed.

The appellee presents a number of cross-assignments, the consideration of which will require some additional statement: In 1875 W. H. Gaston, who at that time owned the property in controversy, made an agreement with Terrell and Seely Martin, the grandparents of Deck Martin, whereby the said Gaston agreed to exchange this property for certain property which was community property of the said Martins. The said Terrell and Seely Martin conveyed their said property to the said Gaston, but it does not appear that the said Gaston executed a deed to them for this property which he was to give them in exchange; however, the said Martins, soon after this agreement for exchange, built a house on this land and moved thereon, and continued to live there for more than 10 years, and until they both died. On April 15, 1887, after Terrell Martin's death, Gaston conveyed said property to Seely Martin, reciting a consideration of $600 paid. Terrell Martin had died in 1886, leaving surviving him his wife, Seely Martin. It is in issue whether Sim Martin, Deck Martin's father, and the only child of Terrell Martin, survived Terrell Martin; the jury answered such issue in the affirmative. Seely Martin died in 1891. The appellees claim a part of the land under deed from Seely Martin and the other part under sale made by the administrator of her estate.

[4, 5] Several of the questions raised by the cross-assignments are disposed of by our holding already announced, and we may dispose of the others by a general statement of the law applicable to the facts stated. When, acting under the contract of exchange, Terrell and Seely Martin conveyed property belonging to the community to Gaston, and went into possession of, and placed valuable improvements on, the land in controversy, they acquired for the community an equitable title to said property. Said title would not prevail over the legal title subsequently acquired by an innocent purchaser for value from the said Gaston. So that, but for the claim of title by limitation, the legal title would be vested in Seely Martin by the conveyance subsequently made to her by the said Gaston, and if the appellees were innocent purchasers without notice of the equitable title they should prevail. But when the Martins went into possession of said property limitation began to run in their favor.

Sheppard v. G., H. & S. A. Ry. Co., 2 Tex. Civ. App. 535, 22 S. W. 267; Heard v. Bowen, 184 S. W. 234. And the facts would justify the finding that, in addition to the equitable title, Seely Martin and Deck Martin had title to this property by limitation at the time of the conveyance from said Gaston to Seely Martin. The defense of innocent purchaser of the legal paper title is not available against the owner of a title by limitation. Rev. St. art. 5679; Burton v. Carroll, 96 Tex. 325, 72 S. W. 581; McGregor v. Thompson, 7 Tex. Civ. App. 32, 26 S. W. 649. If Deck Martin had title to his interest in the land by limitation, it is obvious that the conveyance to Seely Martin could not affect such title thus vested in him, and in such event this title could not be defeated by the plea of innocent purchaser of those purchasing the legal paper title from Seely Martin.

[6] We are of the opinion that the filing of the suit in the name of Deck Martin stopped the running of limitations in favor of appellees as against the intervener's interest. The suit was being prosecuted prior to the intervention for the recovery of the entire interest in the land, and was for the benefit of both the said Deck Martin and the intervener. A judgment in the suit thus prosecuted would have been binding upon the intervener as well as the said Deck Martin. Wickizer v. Williams, 173 S. W. 288; Bonner v. Green, 6 Tex. Civ. App. 96, 24 S. W. 835. The intervention in the case is, therefore, not to be regarded as the institution of a new suit by the intervener, but merely as an incident to the suit already pending, by which was established the right of the intervener to thereafter prosecute in his own name the suit which up to that time had been proceeding for his benefit in the name of Deck Martin. Foote v. O'Roork, 59 Tex. 215; Field v. Gantier, 8 Tex. 74. There is a distinction between this case and the cases referred to by appellant, in which it was held that a suit by one cotenant did not stop the running of limitations against other tenants not a party to the suit. The judgment in such cases would not bind the tenants who were not parties. Reed v. Allen, 56 Tex. 182.

Reversed and remanded.

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes